## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| **OGD EQUIPMENT CO.** *d/b/a* **OVERHEAD GARAGE DOOR, LLC,** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **Civil Action No.: 4:17-cv-00898-ALM-KPJ** |
| **v.** | § | |
| | § | |
| **OVERHEAD DOOR CORPORATION and OVERHEAD DOOR COMPANY OF LUBBOCK, INC.,** | § | |
| | § | |
| | § | |
| | § | |
| **Defendants.** | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

The following motions are pending before the Court:

1. Defendant Overhead Door Corporation's ("Overhead") Rule 12(b)(1) and 12(b)(6) Motion to Dismiss Counts I-IV, and the Trademark-Related Claims in Counts V-VI and VIII, of Plaintiff's First Amended Complaint ("Overhead's Motion to Dismiss") (Dkt. 51), to which Plaintiff OGD Equipment Co. ("OGD") filed a response (Dkt. 63), Overhead filed a reply (Dkt. 69), and OGD filed a sur-reply (Dkt. 71); and

2. Defendant Overhead Door Company of Lubbock's ("Overhead-Lubbock") Motion to Dismiss Plaintiff's First Amended Complaint for Lack of Subject Matter Jurisdiction 12(b)(1), Failure to State a Claim Upon Which Relief Can be Granted 12(b)(6), and for Judgment on the Pleadings 12(c) ("Overhead-Lubbock's Motion to Dismiss") (Dkt. 55), to which OGD filed a response (Dkt. 66), Overhead-Lubbock filed a reply (Dkt. 70), and OGD filed a sur-reply (Dkt. 72).

Upon review of the pleadings and the relevant law, the Court recommends:

1.  Overhead's Motion to Dismiss (Dkt. 51) be **GRANTED IN PART** and **DENIED IN PART**; and

2. Overhead-Lubbock's Motion to Dismiss (Dkt. 55) be **GRANTED IN PART** and **DENIED IN PART**.

# I.  BACKGROUND

## A.  FACTUAL HISTORY

### 1.  Parties

Plaintiff and counter-defendant OGD is a Texas "residential and commercial door repair and installation company." Dkt. 43 at 2–3. OGD was formed after the acquisition of Athens Overhead Door and Corsicana Overhead Door. *Id.* OGD avers that "[n]either Athens Overhead Door nor Corsicana Overhead Door were distributors of or affiliated with [Overhead]." *Id.* OGD has offices throughout Texas and does business nation-wide. *See* Dkt. 43 at 4.

Overhead is an Indiana corporation. Dkt. 43 at 2. OGD alleges that Overhead "is the largest manufacturer, marketer, and distributor of residential and commercial overhead doors and operators in the North American market[.]" *See id.* at 4. Overhead owns several product brands and distributes its "Overhead Door" brand products through a network of more than four hundred authorized distributors. *See id.* Overhead has been in operation since it invented the first upward-lifting garage door in 1921. *See id.* at 4.

Overhead-Lubbock is a Texas corporation and an authorized distributor for Overhead.[1] Dkt. 43 at 2, 4.

### 2.  Trademarks at Issue

Overhead holds a trademark for the words "Overhead Door" in Class 9[2] of the Principal Register of the United States Patent and Trademark Office, for use with garage door openers. Dkt. 43 at 7–8. Overhead obtained federal trademark registration (Registration No. 1807028) for a banner, used as its logo, which contains no wording, in Classes 6, 9, and 19.[3] *Id.* at 8. Additionally,

---

[1] Where appropriate, the Court will refer to Overhead and Overhead-Lubbock together as "Defendants."
[2] Class 9 contains computer and software products and electrical and scientific products.
[3] Class 6 contains metal products, Class 9 contains computer and software products and electrical and scientific products, and Class 19 contains non-metallic building material products.

Overhead asserts that the trade and/or company names "OVERHEAD DOOR," "OVERHEAD DOOR COMPANY," and "OVERHEAD," (collectively, the "Trade Names") as used without any other words, identify Overhead and its authorized and licensed distributors, and distinguish Overhead from other companies in the industry. *See* Dkt. 53 at 3.

OGD registered its logo on the Principal Register, Registration No. 4,312,280, in Class 37.[4] Dkt. 43 at 13, 18. All parties' logos prominently feature the word "Overhead," and feature a curved letter shape or banner. *See* Dkts. 43 at 13; Dkt. 43-3 at 2; Dkt. 43-4 at 2. OGD argues that the shape of the logo, and the logo's prominent use of the word "Overhead," are not unique to either OGD's or Overhead's logo, but are used frequently in the garage door industry. *See* Dkt. 43 at 22.

### 3. Trademark Dispute

OGD alleges Overhead "seeks to enforce its limited federally-registered trademark beyond its scope and expand its reach from electronic controls to overhead door products." *See* Dkt. 43 at 6–9. For example, OGD alleges Overhead uses the designation "TM" after each use of the term "Overhead Door" on the Overhead website, regardless of whether the term is used in its protected form. *See* Dkt. 43 at 9–10. Additionally, OGD alleges Overhead "continues to try to unlawfully monopolize these generic terms" (referring to the Trade Names) through the use of lawsuits, unfair business practices, and letters to competitors. *See, for example, id*. at 10. OGD alleges Overhead and Overhead-Lubbock acted in concert, because Overhead-Lubbock posted a blog post to its website titled, "How to Make Sure You're Working with Overhead Door Company of Lubbock?," and Overhead-Lubbock's website similarly uses the "TM" designation following the term "Overhead Door." *See id*. at 4–5, 23–24. OGD argues that Overhead and Overhead-Lubbock's use of the term "Overhead Door" demonstrates that the term is generic, as it identifies a broad range

---

[4] Class 37 contains construction and repair services.

3

of products sold and serviced throughout the overhead door industry. *See* Dkt. 43 at 4–5, 9–11, 23–24.

On the other hand, Overhead argues that the Trade Names are recognized within the industry and by consumers to identify Overhead and its licensed distributors. As a result, Overhead alleges that OGD "has knowingly used, and is still . . . knowingly us[ing]" Overhead's Trade Names and a deceptive logo, "for the purpose of passing itself off as an Overhead Door distributor, thereby using the OGD Logo to misrepresent the source of the services offered by OGD as being sponsored and approved by Overhead Door[.]" *See* Dkt. 54 at 3–4. Additionally, Overhead argues that use of the Trade Names by OGD in "unfair search engine marketing and search optimization techniques" is deceptive. *See id*. Overhead's licensed distributors, including Overhead-Lubbock, have received notice from multiple customers stating that they were confused by OGD's marketing. *See* Dkt. 66-3 at 8–10.

### 4. The Parties' Relationships

In January of 2012, OGD launched its website, which included information about its products and services, and featured OGD's name and trademarked logo. *See* Dkt. 43 at 13. In October of 2012, Overhead sent OGD a letter asking OGD to "remove a link that inadvertently directed website users to the address of an [Overhead] distributor." *See id*. OGD complied with Overhead's request. *See id*.

Since October of 2012, OGD alleges it has purchased more than $750,000.00 in products and services from Overhead and its affiliates. *See* Dkt. 43 at 14. Overhead contracted OGD to install doors in April of 2017. *See* Dkt. 52 at 6. Because of the parties' ongoing business relationship, OGD alleges it was unaware of any conflict between the parties and "assumed that the parties were on good terms." *See* Dkt. 43 at 14.

On April 27, 2017, Overhead sent OGD a letter regarding use of the Trade Names in paid internet advertisements. Dkt. 43 at 15. OGD alleges that, at that time, Overhead "did not raise any concerns related to OGD's name, trademark, or stylized logo. To the contrary, [Overhead] assured OGD that it could advertise using its company name." Dkt. 43 at 15.

On July 19, 2017, Overhead allegedly mailed OGD a demand letter (the "Cease and Desist Letter") relating to "trademark infringement and unfair competition," in which Overhead allegedly claimed "it held a protectable trade name and trademark over the words 'Overhead Door.'" *See* Dkt. 43 at 15. OGD argues that the letter asserted trade name and trademark protection outside the scope of Overhead's protected uses. *See id*. Further, the Cease and Desist Letter claimed OGD's "business name, trademark, and online advertisements constituted 'clear trademark infringement violations . . . under Texas and Federal law,' . . . as well as violations of Texas unfair competition laws." Dkt. 43 at 15–16; *see also* Dkt. 43-9. Specifically, OGD alleges Overhead asserted that: (1) OGD's trademarked logo "misrepresent[ed] its own name by copying the familiar and recognized shorthand designation of [Overhead's] name and mark[;]" and (2) OGD's website included instances where OGD represented itself to be Overhead. *See* Dkt. 43 at 16. Overhead attached a copy of Overhead's trademark to the Cease and Desist Letter, and stated that Overhead "has regularly taken legal action to prevent use by others of OVERHEAD DOOR or OVERHEAD, as company names." *See* Dkt. 43 at 16–17.

OGD alleges the parties began settlement discussions, but could not resolve their views concerning use of the Trade Names. *See* Dkt. 43 at 17–18. OGD alleges Overhead and Overhead-Lubbock's "attempt to prevent OGD from purchasing the keywords 'overhead' and 'overhead door'" is a violation of the Sherman Act. *See id*. at 19. OGD alleges Overhead demanded OGD "phase out all use of its company name," and any name including the word "overhead" unless it

agreed to a name within specific parameters. *See* Dkt. 43 at 20. Further, OGD alleges Overhead demanded OGD comply with specific online search, social media, and advertising requirements. *See id.*; Dkt. 43-9.

While OGD and Overhead were negotiating, Overhead-Lubbock filed a Rule 202 petition in Texas state court seeking pre-suit discovery and deposition. *See* Dkt. 43 at 18–19. In the Rule 202 petition, Overhead-Lubbock sought a pre-suit deposition concerning six categories of information, including OGD's "[m]arket analysis, business practices, and URL and metadata usage in its online marketing in Lubbock," and "[a]dvertising in [the] Lubbock market, including online and digital advertising and any search parameters purchased as part of that marketing." *See* Dkt. 43 at 19. OGD alleges that Overhead and Overhead-Lubbock acted in concert to file the Rule 202 petition. *See id.* at 18–20.

## B. PROCEDURAL HISTORY

Plaintiff OGD filed suit on December 29, 2017, seeking declaratory judgment, permanent injunction, and an award of attorney's fees. *See* Dkt. 1 at 22–23. Overhead filed a motion to dismiss (Dkt. 11) and an answer (Dkt. 12), which contained counterclaims. Overhead-Lubbock also filed a motion to dismiss and a motion for judgment on the pleadings (Dkt. 13).

On August 20, 2018, OGD filed an Amended Complaint (Dkt. 43). OGD alleges the actions of Overhead and Overhead-Lubbock demonstrate that both Defendants are attempting to "unfairly stifle competition." *See* Dkt. 43 at 21–24. As a result, OGD asserts the following claims against Overhead and Overhead-Lubbock: (Count I) violation of the Sherman Act, 15 U.S.C. § 2; (Count II) unfair competition under the Lanham Act, 15 U.S.C § 1125(a); (Count III) unfair competition under Texas common law. *See* Dkt. 43 at 25–29. OGD also seeks declaratory relief stating the following: (Count IV) OGD does not infringe under 15 U.S.C. § 1114; (Count V) OGD does not

unfairly compete under 15 U.S.C. § 1125(a); (Count VI) Overhead's trademark and trade name is invalid and/or unenforceable as used by Overhead; (Count VII) Overhead-Lubbock has no trademark and/or trade name rights; and (Count VIII) OGD has not violated state trademark and unfair competition laws. *See id*. at 30–34.

Overhead filed an Answer (Dkt. 52) and an Amended Counterclaim (Dkt. 53). Overhead asserts counterclaims for: (1) false designation of origin and false and misleading representations under 15 U.S.C. § 1125(a)(1)(A); and (2) unfair competition and passing off[5] in violation of Texas common law. *See* Dkt. 53 at 3–7. Following the filing of the Amended Complaint, the Court denied the earlier Motions to Dismiss (Dkts. 11, 13) as moot. *See* Dkt. 46. Thereafter, Defendants filed the instant Motions to Dismiss. *See* Dkts. 51, 55.

## II.  LEGAL STANDARD

### A.  RULE 12(b)(1)

Rule 12(b)(1) provides that a party may assert the defense of lack of subject-matter jurisdiction by motion. FED. R. CIV. P. 12(b)(1). A court must address a Rule 12(b)(1) jurisdictional challenge before addressing a challenge on the merits under Rule 12(b)(6). *Braatz, L.L.C. v. Red Mango FC, L.L.C.*, 642 F. App'x 406, 408–09 (5th Cir. 2016) (per curiam) (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)). Addressing Rule 12(b)(1) arguments first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Ramming*, 281 F.3d at 161.

"Where a court lacks the statutory power to adjudicate a case, it must dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)." *Boy Scouts of Am. v. Nat'l Union Fire Ins. Co. of*

---

[5] "Passing off" or "palming off" goods or services as the goods or services of another is one method of asserting the tort of unfair competition. *See Line Enterps., Inc. v. Hooks & Matteson Enterps., Inc.*, 659 S.W.2d 113, 117 (Tex. App.—Amarillo 1983) (describing state law unfair competition); *Roho, Inc. v. Marquis*, 902 F.2d 356, 359 (5th Cir. 1990) (describing "palming off" and "reverse palming off" under the Lanham Act).

*Pittsburgh*, 2016 WL 495599, at *2 (N.D. Tex. Feb. 8, 2016) (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). The Declaratory Judgment Act provides, "In a case of actual controversy within its jurisdiction . . . any Court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Declaratory judgment is available only in circumstances where an "actual controversy" exists. *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000). That is, it is available only when the declaratory judgment action is ripe. *Id*. If the action is not ripe, it is not justiciable and must be dismissed. *See id*.

### B. RULE 12(b)(6)

Rule 12(b)(6) provides that a party may move for dismissal of an action for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). The court must accept as true all well-pleaded facts contained in the plaintiff's complaint and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). A claim will survive an attack under Rule 12(b)(6) if it "may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007). In other words, a claim may not be dismissed based solely on a court's supposition that the pleader is unlikely "to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Id*. at 563 n.8.

When considering a motion to dismiss, the court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. *See Lone Star Fund V (U.S.), L.P. v.*

*Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).

### C.  RULE 12(c)

Rule 12(c) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). "A motion brought pursuant to FED. R. CIV. P. 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co., Inc. v. Touchstone Properties,* 914 F.2d 74, 77 (5th Cir. 1990); *see also Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002); *United States v. Renda Marine, Inc.*, 750 F. Supp. 2d 755, 763 (E.D. Tex. 2010), *aff'd*, 667 F.3d 651 (5th Cir. 2012), *cert. denied*, 569 U.S. 918 (2013); *Victory Med. Ctr. Beaumont, L.P. v. Connecticut Gen. Life Ins. Co.*, 2018 WL 3467915, at *3 (E.D. Tex. July 17, 2018). A "judicially noticed fact" is one that "is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned." *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 829 (5th Cir. 1998) (citing FED. R. EVID. 201(b)); *Karch v. JPMorgan Chase Bank, N.A.*, 2017 WL 1426755, at *2 (E.D. Tex. Apr. 20, 2017).

Rule 12(c) motions are treated as motions for judgment on the pleadings based on a failure to state a claim upon which relief can be granted. *Johnson v. Pharm. USA, Inc.*, 758 F.3d 605, 610 (5th Cir. 2014) (noting that motions to dismiss under Rule 12(c) are governed by the same standards applicable to motions under Rule 12(b)(6)); *Truong v. Bank of Am., N.A.*, 717 F.3d 377, 381 (5th Cir. 2013); *Gentilello v. Rage*, 627 F.3d 540, 543–44 (5th Cir. 2010) ("We evaluate a motion under Rule 12(c) for judgment on the pleadings using the same standard as a motion to

9

dismiss under Rule 12(b)(6) for failure to state a claim."); *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004) (same). The primary focus is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief. *United States v. 0.073 Acres of Land*, 705 F.3d 540, 543 (5th Cir. 2013); *Great Plains Tr. Co.*, 313 F.3d at 312; *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001). "Pleadings should be construed liberally, and judgment on the pleadings is appropriate only if there are no disputed issues of fact and only questions of law remain." *Great Plains Tr. Co.*, 313 F.3d at 312 (quoting *Hughes*, 278 F.3d at 420). In making such a determination, the court is restricted to the pleadings and must accept all allegations as true. *Hughes*, 278 F.3d at 420 (citing *St. Paul Ins. Co. v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir. 1991)); *see Great Plains Tr. Co.*, 313 F.3d at 312. Nevertheless, the court will not accept as true conclusory allegations or unwarranted deductions of fact. *Great Plains Tr. Co.*, 313 F.3d at 313.

The court may, however, consider documents referenced in the plaintiff's complaint and central to the plaintiff's claim and may take judicial notice of publicly filed documents when analyzing a Rule 12(c) motion for judgment on the pleadings. *Van Duzer v. U.S. Bank Nat'l Ass'n*, 995 F. Supp. 2d 673, 685 (S.D. Tex. 2014).

### D. THE DECLARATORY JUDGMENT ACT

The Declaratory Judgment Act grants federal courts the ability to "declare the rights and other legal relations of any interested party seeking such declaration. . . ." 28 U.S.C. § 2201(a). The Fifth Circuit has long held that parties with legal interests threatened in an actual controversy have standing to sue under the Declaratory Judgment Act. *See, e.g., Vantage Trailers, Inc. v. Beall Corporation,* 567 F.3d 745, 748 (5th Cir. 2009); *Collin County, Texas v. Homeowners Association for Values Essential to Neighborhoods (HAVEN),* 915 F.2d 167, 170 (5th Cir. 1990). A declaratory

judgment is often sought before a completed injury-in-fact has occurred. *United Transportation Union v. Foster,* 205 F.3d 851, 857 (5th Cir. 2000).

The Declaratory Judgment Act does not extend the subject matter jurisdiction of the court beyond the limits delineated in Article III of the United States Constitution. *Skelly Oil Company v. Phillips Petroleum Company,* 339 U.S. 667, 671 (1950); *see also Okpalobi v. Foster,* 244 F.3d 405, 434 (5th Cir. 2001) (en banc) ("[T]he Declaratory Judgment Act does not itself grant federal jurisdiction."). Declaratory judgments "still must be limited to the resolution of an 'actual controversy.'" *United Transportation,* 205 F.3d at 857 (citing *Aetna Life Insurance Company v. Haworth,* 300 U.S. 227, 239–40 (1937)); *see also Standard Fire Insurance Company v. Sassin,* 894 F. Supp. 1023, 1026 (N.D. Tex. 1995) ("The Declaratory Judgment Act does not exempt federal district courts from the constitutional requirement that there be an actual controversy between the parties."). At the same time, "[i]t is well-established that the phrase 'actual controversy' in § 2201(a) includes any controversy over which there is Article III jurisdiction." *Caraco Pharmaceutical Laboratories, Limited v. Forest Laboratories, Inc.,* 527 F.3d 1278, 1290 (Fed. Cir. 2008) (citing *Aetna Life Insurance Company,* 300 U.S. at 239–40), *cert. denied,* 555 U.S. 1170 (2009); *see also Young v. Vannerson,* 612 F.Supp.2d 829, 840 (S.D. Tex. 2009) ("[S]howing a controversy for the purpose of a declaratory judgment action requires no greater showing than is required under Article III." (citing *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 126–27 (2007))).

The Supreme Court has held that the Declaratory Judgment Act grants discretion to district courts rather than an absolute right to litigants. *Wilton v. Seven Falls Company,* 515 U.S. 277, 288 (1995) ("By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to

qualifying litigants."); *see also Sherwin–Williams Company v. Holmes County,* 343 F.3d 383, 389 (5th Cir. 2003). The Fifth Circuit has outlined the three steps a district court must follow to determine whether to decide or dismiss a declaratory judgment case: the district court must determine whether (1) the declaratory action presents a justiciable actual controversy; (2) it has the authority to grant declaratory relief; and (3) to exercise its discretion to decide or dismiss the action. *Sherwin–Williams,* 343 F.3d at 387.

### III.   <u>ANALYSIS</u>

#### A.  RULE 8

Defendants assert that OGD's "shotgun" pleadings warrant dismissal because OGD does not consistently articulate which acts are taken by each Defendant. Rather, OGD refers to both Overhead and Overhead-Lubbock collectively as "Defendants." *See* Dkt. 51 at 32; Dkt. 55 at 12. Rule 8 requires that pleadings contain "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to give the opposing party notice of what the claim is and the grounds upon which it rests. *Twombly*, 550 U.S. at 555; FED. R. CIV. P. 8(a)(2). "What makes a pleading an objectionable 'shotgun' pleading is the inclusion of irrelevant and unrelated facts not tied to specific causes of action such that the claims made are indeterminate and the defendant's task in defending against them is significantly impaired." *Martinez v. Nueces Cnty.*, *Tex.*, 2013 WL 6190519, at *4 (S.D. Tex. Nov. 26, 2013) (citation omitted).

While the Court notes that OGD does not always identify which Defendant took a particular act, the Court finds that the pleadings do not "wreak havoc on the court system" or "deprive [Defendants] of the allegations against [them]" as Overhead alleges. *See* Dkt. 51 at 32. To the contrary, before OGD's individual claims in this action are identified in OGD's Amended Complaint, there is a detailed factual narrative as to each Defendant's alleged acts. *See* Dkt. 43 at

1–25. The detailed factual background includes the allegations against Defendants individually and collectively, and is repeated within each claim allegation for clarity. Moreover, OGD does not include excessive and irrelevant or unrelated facts which do not relate to the eight causes of action asserted in the Amended Complaint.

The Court finds the Amended Complaint sets forth sufficient notice to apprise Defendants of the allegations against them and satisfies the Rule 8 pleading requirements.

### B.  RULE 12(b)(1) MOTIONS

OGD seeks a judicial declaration that: (1) OGD does not infringe under 15 U.S.C. § 1114; (2) OGD does not unfairly compete under 15 U.S.C. § 1125(a); (3) Overhead's trademark and trade name is invalid and/or unenforceable as used by Overhead; (4) Overhead-Lubbock has no trademark and/or trade name rights; and (5) OGD has not violated state trademark and unfair competition rights. *See* Dkt. 43 at 29–34 (describing OGD's Counts IV, V, VI, VII, and VIII). Overhead argues the Court lacks subject matter jurisdiction because Count IV, V, VI, and VIII seek declaratory relief beyond the scope of the actual controversy in this case; Overhead-Lubbock argues the Court lacks subject matter jurisdiction because there is no case or controversy regarding Count VII.  *See* Dkt. 51 at 2; Dkt. 55.

### 1. Actual Controversy

Defendants assert there is no "case or controversy" between the parties. *See* Dkt. 51 at 15. While there is no mechanistic process to determine whether an "actual controversy" exists in a declaratory judgment action, the Supreme Court has clearly instructed, "'[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *MedImmune,* 549 U.S. at 127 (quoting *Maryland*

*Casualty Company v. Pacific Coal & Oil Company,* 312 U.S. 270, 273 (1941)); *see also GTE Sylvania, Inc. v. Consumers Union of the United States, Inc.,* 445 U.S. 375, 382 (1980) (Article III's case-or-controversy requirement limits "federal courts to questions presented in an adversary context. . . .") (citation and internal quotation marks omitted). Further, the controversy "must be such that it can presently be litigated and decided and not hypothetical, conjectural, conditional or based upon the possibility of a factual situation that may never develop." *Rowan Companies, Inc. v. Griffin,* 876 F.2d 26, 28 (5th Cir. 1989) (quoting *Brown & Root, Inc. v. Big Rock Corporation,* 383 F.2d 662, 665 (5th Cir. 1967)); *see also C & H Nationwide, Inc. v. Norwest Bank Texas NA,* 208 F.3d 490, 493 (5th Cir. 2000) ("Federal courts are not in the business of rendering advisory opinions.").

Courts apply a common framework to the justiciability analysis in all patent, copyright, and trademark declaratory judgment suits. *See Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009). Prior to the Supreme Court's decision in *MedImmune*, the framework was a two-part test, which required the plaintiff seeking declaratory relief to show: (1) an explicit threat or other action by the [holder of a patent, trademark, or copyright], which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit; and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity. *See, e.g.*, *Texas v. West Pub. Co.*, 882 F.2d 171, 175 (5th Cir. 1989) (adopting the Federal Circuit's two-part test). *MedImmune* invalidated the first prong of this test. *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380 (Fed. Cir. 2007) (citing *MedImmune*, 549 U.S. 118). Consequently, the new "question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interest, of sufficient immediacy and reality to warrant the issuance of a

14

declaratory judgment." *MedImmune*, 549 U.S. at 127 (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

Although threats of legal action are no longer dispositive in this analysis, they can help support the existence of an actual controversy if they are sufficiently specific and concrete. *Young v. Vannerson*, 612 F. Supp. 2d 829, 840 (S.D. Tex. 2009) (citing *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1336 (Fed. Cir. 2008)) ("[F]ollowing *MedImmune*, proving a reasonable apprehension of suit is one of multiple ways that a declaratory judgment plaintiff can satisfy the more general all-the-circumstances test to establish that an action presents a justiciable Article III controversy."); *see also EnviroGLAS Products, Inc. v. EnviroGLAS Products, LLC*, 705 F. Supp. 2d 560, 566 (N.D. Tex. Apr. 6, 2010) (finding cease and desist letters are sufficient affirmative acts to demonstrate a litigant's intent and willingness to enforce its trademark rights through suit). Likewise, actual manufacture, use, or sale of a potentially infringing product can indicate the presence of an actual controversy. *Id.* (citing *Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1215 (7th Cir. 1980)).

Based on the alleged facts, the Court finds there is an actual controversy between OGD and Overhead. The dispute can be summarized as follows: OGD and Overhead use the terms "overhead," "overhead door," and derivatives of these terms, in their name, marketing, and public facing materials. OGD contends these terms are merely generic usage and are unlikely to cause confusion, mistake, or deception under the Lanham Act. *See* Dkt. 43 at 30. Overhead's Cease and Desist Letter to OGD asserts that the use of these terms, in the manner OGD presently uses them, leads to, *inter alia*, customer confusion, unfair competition, and infringement on Overhead's trade name. *See* Dkt. 63-1 at 5. Thus, OGD alleges Overhead's actions constitute violations of the Lanham Act and the Sherman Act and seeks declaratory judgment regarding each party's rights.

*See* Dkt. 43. Likewise, Overhead asserts a claim for false and misleading representation under the Lanham Act and unfair competition and passing off under Texas common law. Both parties claim contradictory rights to use the Trade Names to describe their companies, products, and services. These alleged rights and uses of the Trade Names by the parties are incompatible. Accordingly, the allegedly infringing nature of the ongoing use of the Trade Names and trademarked language establish an actual controversy between the parties.

As the Court finds an actual controversy exists, the Court now examines each request for judicial declaration asserted by OGD to determine if the scope of the controversy extends to each. As only Count VII, whether Overhead-Lubbock has trademark and/or trade name rights, relates to Overhead-Lubbock, and Counts IV, V, VI, and VIII relate only to the rights of OGD and/or Overhead, the Court addresses each claim individually as to each Defendant.

a.  Count IV

Overhead argues the Court lacks jurisdiction to determine Count IV, whether OGD infringed Overhead's federally registered trademarks under 15 U.S.C. § 1114, because no threat of trademark infringement was made by Overhead under Section 1114. *See* Dkt. 51 at 15–16. The Court disagrees.

Determining if the Court has jurisdiction to decide this matter requires a determination of whether there was an objective possibility of litigation, not a subjective belief. *See Emme Bridal Inc. v. Milady Bridals Inc.*, 1998 WL 241202, at *2 (S.D. Tex. Mar. 17, 1998). Overhead directs the Court to the Cease and Desist Letter in which Overhead alleges it limited its use of the term "trademark" to only Section 1125 of the Lanham Act. *See* Dkt. 43-9. In the Cease and Desist Letter, Overhead invoked the Trade Names, Overhead's trademark, the "Ribbon" logo, and referred to OGD's actions as "clear trademark infringement violations under Texas or Federal law

(*e.g.,* Sec. 43(a)(1) of the Lanham Act). . . ." *See* Dkt. 43-9 at 3–5. Overhead's Cease and Desist

Letter does not state that Overhead would bring civil claims *exclusively* pursuant to Section 1125.

In the Cease and Desist Letter, Overhead asserts rights to use the Trade Names and its asserted

trademark broadly, without limiting its claims to a specific provision of the statute or to specific

uses of the Trade Names. *See id.* Further, Overhead attached its federal registration for the term

"OVERHEAD DOOR" to the letter. *See* Dkt. 43-9 at 10. This trademark is specific to Class 9, and

refers to "electronic controls for actuating and controlling the operation of electronic drive

motors," among other electronic control operations. *See* Dkt. 43-9 at 10.

Claim IV strikes at the heart of the parties' dispute as to who may use the Trade Names

and in what manner. Based on Overhead's communications, it is objectively possible, if not

probable, that Overhead would bring suit under Section 1114, Section 1125, and/or Texas statutes.

Objectively construing the broad language and attachment of the registration, the Cease and Desist

Letter does not limit any claims or rights asserted by Overhead to specific causes of action. OGD

has pled facts sufficient to support an objective finding that it was possible Overhead intended to

pursue trademark infringement under Section 1114, as well as Section 1125(a). *See also* Dkt. 63

at 21–23.

b.  Counts V, VI, VIII

Overhead agrees there is a concrete dispute between Overhead and OGD under federal law,

because Overhead alleges OGD's conduct "is designed to pass itself off as Overhead Door or [an]

Overhead Door affiliate[.]" *See* Dkt. 51 at 18. Overhead argues, however, that portions of Counts

V, VI, and VIII should be dismissed because they exceed the scope of the only actual controversy

between the parties. *See id.* Specifically, Overhead asserts that Counts V, VI, and VIII exceed the

scope of federal or Texas trademark rights because Overhead has not asserted that OGD infringes

federal or Texas trademarks; hence, Overhead cannot seek judicial relief on these counts, as no justiciable controversy has arisen. *See* Dkt. 51 at 19. The Court disagrees, as the controversy between the parties is not so narrow as Overhead claims. The parties' dispute includes use of the Trade Names, the parties' trademarks, and whether logos or other marketing materials cause market confusion or result in passing off. *See generally* Dkt. 43; Dkt. 43-9 (discussing "trade designation," "customer confusion," and the "OVERHEAD DOOR trade mark and name"); Dkt. 53. As addressed above, the letters sent by Overhead to OGD did not limit the claims to specific causes of action, but rather asserted disputes regarding the use of Trade Names generally. As Counts V, VI, and VIII all relate directly to the parties' use of the Trade Names, as well as OGD and Overhead's trademarks, these causes of action arise from the parties' ongoing dispute. Thus, the Court finds that Counts V, VI, and VIII give rise to a sufficiently definite and concrete dispute. *See Vantage Trailers*, 567 F.3d at 748.

### c. Count VII

In reviewing OGD's Count VII, in which OGD seeks a declaration that Overhead-Lubbock has no trademark and/or trade name rights, the Court reaches a different conclusion. While it was objectively reasonable to anticipate suit, thus the conflict was immediate, there is no real or concrete dispute between OGD and Overhead-Lubbock regarding Overhead-Lubbock's trademark or trade name rights.

Overhead-Lubbock filed a Rule 202 petition in Texas state court. *See* Dkt. 66 at 33. A Texas state Rule 202 petition is not an independent civil action and "does not assert any claim or cause of action upon which a court could grant relief." *In re Enable Commerce, Inc.*, 256 F.R.D. 527, 531 (N.D. Tex. Mar. 10, 2009) (internal quotations omitted). Rather, by filing the petition, plaintiff seeks authority to take a deposition for use in an anticipated lawsuit. *See id*. Rule 202

petitions are to be used rarely and "never have been intended for routine use." *In re PrairieSmarts LLC*, 421 S.W.3d 296, 305 (Tex. App.—Ft. Worth 2014). Accordingly, because Overhead-Lubbock filed the Rule 202 petition, the specter of an anticipated lawsuit was raised, and it was therefore objectively reasonable for OGD to believe suit was imminent.

However, no declaratory relief is required or appropriate because there is no real conflict between OGD and Overhead-Lubbock regarding the trade name rights at issue. While it may have been objectively reasonable to believe suit was imminent, Overhead-Lubbock does not assert rights to the Trade Names over which OGD seeks declaratory relief. To the contrary, Overhead-Lubbock acknowledges it "does not have any standalone trademark protection and has not registered any mark, logo, or tradename with the United States Patent Office or any other registering entity and has never claimed such." *See* Dkt. 55 at 2. Overhead and Overhead-Lubbock are separate entities with different trademark and trade name rights.  Any conflict between OGD and Overhead regarding rights to use the Trade Names does not establish the real conflict necessary to seek declaratory judgment regarding the rights of any or all of OGD's distributors.  OGD's pleadings, taken in the light most favorable to OGD, do not establish a substantial, real conflict between OGD and Overhead's distributors which could give rise to the Court's jurisdiction for declaratory relief.

Because OGD fails to establish either a concrete or real conflict with Overhead-Lubbock, OGD fails to establish this Court's subject matter jurisdiction to decide Count VII. As such, the Court recommends Overhead-Lubbock's Motion to Dismiss OGD's Count VII be **GRANTED** and OGD's request for declaratory relief regarding the trademark and/or trade name rights of Overhead-Lubbock be **DISMISSED**.

### 3.   Immediacy and Reality of Conflict

Because Claims IV, V, VI, and VIII represent actual controversies between OGD and Overhead, the Court examines whether each conflict is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. The communications between OGD and Overhead show that the dispute is "definite and concrete, real and substantial," as required under *Vantage Trailers*. *See* 567 F.3d at 748. On April 27, 2017, Overhead's counsel demanded that OGD immediately cease use of the Trade Names in online marketing. *See* Dkt. 43-8 at 2. On July 19, 2017, Defendant Overhead's communications to OGD characterized OGD's acts as "advertisement misrepresentation," constituting a dispute which must be "promptly abated to avoid the necessity of any further legal action." *See* Dkt. 43-9 at 2. This letter raised the specter of litigation. *See* Dkt. 43-9 at 2, 5–6. On December 21, 2017, while the parties continued to negotiate, Overhead requested that OGD "phase out all use of its present company name," cease using the Trade Names, and change its online search engine and social media use to comply with Overhead's specifications, among other concerns. *See* Dkt. 63-4 at 2–4. The letters sent by Overhead establish that an immediate controversy exists between OGD and Overhead, and that OGD was put "to the choice between abandoning [its] rights [to the Trade Names] or risking prosecution." *See MedImmune*, 549 U.S. at 129. Moreover, OGD's course of conduct by using the Trade Names in its name, marketing, and consumer-facing content is at loggerheads with Overhead's assertions and arguments regarding use of the Trade Names. *See* Dkt. 63-4 at 2–4. The Court finds OGD sufficiently pled facts which support an objective, real, and reasonable apprehension of litigation. *See Emme Bridal*, 1998 WL 241202, at *2.

Thus, considering "the facts alleged, under all the circumstances," the Court finds there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy

and reality to warrant the issuance of a declaratory judgment in this matter. *See MedImmune*, 549 U.S. at 127.  Accordingly, the Court has subject matter jurisdiction to decide Counts IV, V, VI, and VIII, and the conflict is of such immediacy as to warrant declaratory relief. Therefore, the Court recommends that Overhead's 12(b)(1) Motion to Dismiss be **DENIED**.

### C.  RULE 12(b)(6) and 12(c) MOTIONS

Overhead and Overhead-Lubbock argue OGD's claims under the Lanham Act and Sherman Act should be dismissed for failure to state a claim. The Court addresses Defendants' Rule 12(b)(6) and 12(c) Motions jointly, as they are governed by the same standard. *See Pharm. USA*, 758 F.3d at 610; *Gentilello*, 627 F.3d at 543–44.

### 1. **Unfair Competition under the Lanham Act**

Unfair competition claims under the Lanham Act are governed by the same standard as those for trademark infringement, *e.g.*, the likelihood of confusion. *Scott Fetzer Co. v. House of Vacuums Inc.,* 381 F.3d 477, 483 (5th Cir. 2004); *see also Matrix Essentials, Inc. v. Emporium Drug Mart,* 988 F.2d 587, 592 (5th Cir. 1993) ("As with trademark infringement, the touchstone of a section 1125(a) unfair competition claim is whether the defendant's actions are 'likely to cause confusion.'").

OGD alleges Defendants have knowingly misrepresented: (1) they, along with other Overhead distributors, are the only companies that can lawfully use the Trade Names; (2) OGD is using the Trade Names with the intent to trade on Defendants' brand names and purposefully confuse consumers; (3) OGD is not a reputable company; (4) OGD is affiliated with a company called "GDS" or "Garage Door Services," which has been the subject of negative articles and lawsuits; and (5) OGD is a deceptive company that intends to confuse consumers. *See* Dkt. 43 at 28. Consequently, OGD alleges consumers either have been deceived, or are likely to be deceived,

by Defendants' misrepresentations. *See id.* OGD supports its allegations with specific communications by Defendants in online advertising and marketing and the creation and posting of a specific blog entry by Overhead-Lubbock.[6] *See* Dkt. 43 at 5–18, 20–21, 23–25, 28. Moreover, OGD alleges that Defendants acted in concert because the blog post featured on Overhead-Lubbock's webpage was allegedly written by an individual who was employed both by Overhead and Overhead-Lubbock. *See* Dkts. 23–24, 28.

Considering the pleadings in the light most favorable to the non-movant, OGD has pled sufficient facts under Rule 8 to state a claim for relief under § 1125 of the Lanham Act, because it is possible consumers were confused by the acts of Defendants. Accordingly, the Court recommends Defendants' Motions to Dismiss OGD's Lanham Act claim for unfair competition be **DENIED**.

### 2.   Unfair Competition under State Law

Unfair competition claims under Texas law are analyzed under the same standard as unfair competition claims under the Lanham Act. *See Amazing Spaces, Inc. v. Metro Mini* Storage, 608 F.3d 225, 236 n.7 (5th Cir. 2010) ("A[n] . . . unfair competition action under Texas common law presents essentially no difference in issues than those under federal trademark infringement actions." (internal quotations and citations omitted)). "[A]bsent argument that there are differences between the federal and state versions of unfair competition claims, courts in the Fifth Circuit analyze these claims together." *Healthpoint, Ltd. v. Allen Pharm., LLC,* 2008 WL 728333 (W.D. Tex. Mar. 18, 2008) (citing *King v.* Ames, 179 F.3d 370, 374 (5th Cir. 1999)). "Unfair competition under Texas law 'is the umbrella for all statutory and non-statutory causes of action arising out of

---

[6] OGD also devotes significant effort to pleading facts regarding Overhead's litigation history, wherein Overhead allegedly attempted to enforce its rights to the Trade Names through demand letters and litigation. However, there are no facts which support a finding that this litigation resulted in consumer confusion. Accordingly, it is not relevant to the Court's Lanham Act analysis.

business conduct which is contrary to honest practice in industrial or commercial matters.'" *Taylor Publishing Co. v. Jostens, Inc.*, 2016 F.3d 465, 486 (5th Cir. 2000) (quoting *Am. Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3, 14 (5th Cir. 1974)). "Unfair competition includes a number of types of objectionable trade practices, including trademark infringement, dilution of good will, misappropriation of business value, palming off, passing off, and theft of trade secrets." *Kodiak Prods. Co., Inc. v. Deegear*, 2015 WL 3523195, at *8 (Tex. App.—Fort Worth, June 4, 2015) (citing *Healthpoint, Ltd. v. River's Edge Pharms., LLC*, 2005 WL 356839, at *3 (W.D. Tex. Feb. 14, 2005); *U.S. Sporting Prds., Inc. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214, 217 (Tex. App.—Waco 1993, writ denied)).To prevail on its unfair competition claim, OGD must show an illegal act by Overhead and Overhead-Lubbock which interferes with OGD's ability to conduct its business. *Id.* Texas does not have a common-law cause of action for false advertising. *Kodiak Prods. Co.*, 2015 WL 3523195, at *8 (Tex. App.—Fort Worth, June 4, 2015) (collecting cases).

OGD alleges Defendants have knowingly misrepresented that: (1) Defendants and affiliates of Defendants are the only companies that can lawfully use the terms "Overhead" and "Overhead Door;" (2) OGD is using the terms "Overhead" and "Overhead Door" with the intent to trade on Defendants' names and purposefully confuse consumers; (3) OGD is not a reputable company; (4) OGD is affiliated with a company called "GDS" or "Garage Door Services," which has been the subject of negative articles and lawsuits; and (5) OGD is a deceptive company that intends to confuse consumers and that it does not have a physical location in Lubbock. *See* Dkt. 43 at 29. By and large, these are the same allegations as those alleged in OGD's Lanham Act claim. While Defendants argue that OGD's allegations are in fact a false advertising claim under the Lanham Act, the Court disagrees. OGD's allegations are akin to a claim for dilution of good will.

*See Kodiak Prods. Co.*, 2015 WL 3523195, at *8. Thus, these are the types of acts which may give rise to an unfair competition claim under Texas common law.

Further, as the Court recommends that OGD's Lanham Act claim survive Defendants' Motions to Dismiss, the Court finds OGD's unfair competition claims are properly premised on independent substantive torts. *See Greater Houston Trans. Co. v. Uber Technologies, Inc.*, 155 F. Supp. 3d 670, 697 (S.D. Tex. Dec. 18, 2016) (citing *Schoellkopf v. Pledger*, 778 S.W.2d 897, 904–05 (Tex. App.—Dallas 1989, writ denied)). Therefore, the Court finds that OGD has adequately pled a common law claim of unfair competition against Overhead and Overhead-Lubbock. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Schoellkopf*, 778 S.W.2d at 904–05. Hence, the Court recommends Defendants' Motions to Dismiss OGD's common law unfair competition claim be **DENIED**.

### 3. Sherman Act

OGD alleges Defendants "have monopolized or attempted to monopolize the market for overhead door products and services in Lubbock, Texas[,]" and throughout the state of Texas generally, in violation of § 2 of the Sherman Act. *See* Dkt. 43 at 25. Specifically, OGD alleges Defendants "have monopolized or attempted to monopolize the retail sale of overhead door products and services." *Id*. In the Motion to Dismiss, Overhead argues that: (1) OGD failed to plead any facts establishing there are no substitutes for Overhead's products; (2) the geographic market is implausible; and (3) no acts by Overhead prevented OGD from competing. *See* Dkt. 51 at 23–31. Likewise, Overhead-Lubbock argues that: (1) OGD failed to established Overhead-Lubbock has attempted to monopolize the Lubbock market; (2) Overhead-Lubbock has not engaged in monopolistic conduct, with monopolistic intent, and there was no probability of

Overhead-Lubbock attaining monopoly power; and (3) OGD failed to assert claims regarding the Lubbock product and geographic market. *See* Dkt. 55 at 9–13.

Section 2 of the Sherman Act covers both concerted and independent action, but only if that action "monopolize[s]." 15 U.S.C. § 2; *Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 190 (2010). A violation of Section 2 occurs when "the asserted violator: (1) possesses monopoly power in the relevant market; and (2) acquired or maintained that power willfully, as distinguished from the power having arisen and continued by growth produced by the development of a superior product, business acumen, or historic accident." *Abraham & Veneklasen Joint Venture v. American Quarter Horse Ass'n*, 776 F.3d 321, 334 (5th Cir. 2015) (quoting *Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 522 (5th Cir. 1999)).

a. Geographic and Product Market

"As a prerequisite to any antitrust claim, [a] plaintiff must allege a relevant market in which the anticompetitive effects of the challenged activity can be assessed." *Lone Star Milk Producers, Inc. v. Dairy Farmers of Am., Inc.*, 2001 WL 1701532, at *5 (E.D. Tex. Jan. 22, 2001). The definition of a relevant market is both a "function of the relevant product market and the relevant geographic market." *Wampler v. S.W. Bell Tel. Co.*, 597 F.3d 741, 744 (5th Cir. 2010). The Fifth Circuit requires a plaintiff to plead a relevant product market in precise economic terms:

> Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient, and a motion to dismiss may be granted.

*Apani Sw., Inc. v. Coca-Cola Enterprises, Inc.*, 300 F.3d 620, 628 (5th Cir. 2002). OGD defines the relevant product market as "the retail sales of overhead door products and services." Dkt. 43 at 25. OGD defines the relevant geographic markets as "(1) the State of Texas, and (2) the regional territories, such as Lubbock, Texas, that are assigned to distributors of [Overhead]." Dkt. 43 at 25.

The parties do not dispute the product market, rather, Defendants argue that OGD inadequately pleads facts which support the asserted geographic market.

"In defining the relevant geographic market, [courts consider] 'the area of effective competition.'" *Wampler*, 597 F.3d at 744 (quoting *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 328 (1961)). "This is the area 'in which the seller operates and to which buyers can practicably turn for supplies.'" *Id.* (quoting *Brown Shoe Co. v. United States*, 370 U.S. 394, 336–37 (1962)). "These 'commercial realities' include 'size, cumbersomeness, and other characteristics of the relevant product' along with 'regulatory constraints impeding the free flow of competing goods into an area, such as perishability of products, and transportation barriers.'" *Id.* at 744–45. When determining the "economic significance" of a proposed market, courts consider whether the proposed market is "largely segregated from, independent of, or not affected by competition elsewhere." *Id.* at 745.

OGD defines the geographic market in the alternative: (1) those areas in which an Overhead distributor operates; or (2) the state of Texas. The geographic markets described in the Complaint (Dkt. 43) are insufficient as a matter of law. First, defining the geographic market as the entire state of Texas bears no economic relationship to the reality of actual consumer purchases of overhead doors. Plaintiff acknowledges that consumers in cities within Texas do not purchase overhead doors from retailers in other cities. *See* Dkt. 63 at 31 ("As to geographic market, [Overhead] effectively acknowledges the proposed regional market definition by asserting, *correctly*, that overhead door companies in Houston or Wichita Falls do not act as meaningful competition in Lubbock." (citing Dkt. 51 at 28) (emphasis added)). Moreover, during the July 12, 2019, telephonic hearing, Plaintiff conceded that the state of Texas is not a proper geographic market as pled.

Second, the attempt to narrow the geographic market to only those regions with an Overhead distributor is an attempt to create a fictitious market. *See Apani*, 300 F.3d at 633 ("Here, Apani has simply attempted to artificially narrow a broader economic market, the City of Lubbock, to specific venues. Such pleading maneuvers may not be used for the purpose of creating a fictitious market."). Limiting the geographic market to the location of an Overhead distributor artificially narrows a broader economic market to specific cities or zip codes simply based on the location of an available defendant.  Geographic markets depend on the market to which a *consumer* can turn for supplies, based on the economic reality of both the product and barriers to entry. *See Wampler*, 597 F.3d at 744–45. Defining the market based only on where Overhead happens to have distributors bears no relationship to the economic realities of where consumers purchase overhead doors.

OGD has failed to properly define a geographic market. Defining a geographic market is a necessary prerequisite to pleading an antitrust claim under the Sherman Act. *Apani*, 300 F.3d at 628.  Accordingly, in the absence of a proper geographic market, the Court recommends Defendants' Motions to Dismiss (Dkts. 51, 55) Plaintiff's Sherman Act claims be **GRANTED**.[7]

## IV.   RECOMMENDATION

Based on the foregoing, the Court recommends Defendant Overhead Door Corporation's Motion to Dismiss (Dkt. 51) be **GRANTED IN PART** and **DENIED IN PART**. Overhead's Motion to Dismiss (Dkt. 51) should be **GRANTED** with respect to OGD's Sherman Act claim (Count I). All other relief should be **DENIED**.

---

[7] During the July 12, 2019, telephonic hearing, the parties discussed OGD's antitrust claim, among other issues. At that time, OGD made an oral motion (Dkt. 77) requesting leave to amend Count I of the Complaint (Dkt. 43) in order to replead the geographic market. The Court granted the oral motion in part, permitting OGD to file an Amended Complaint with leave to revise its pleadings related to the geographic market of Lubbock, Texas only. *See* Dkt. 78.

Further, the Court recommends Defendant Overhead Door Company of Lubbock, Inc.'s Motion to Dismiss (Dkt. 55) be **GRANTED IN PART** and **DENIED IN PART**. The Court recommends the Motion to Dismiss (Dkt. 55) be **GRANTED** with respect to OGD's declaratory judgment claim regarding Overhead-Lubbock's rights (Count VII) and OGD's Sherman Act claim against Overhead-Lubbock (Count I). All other relief should be **DENIED**.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(C). The parties are directed to Local Rule CV-72(c) for page limitations on objections.

Failure to timely file written objections to the proposed findings and recommendations contained in this report shall bar an aggrieved party from de novo review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

**IT IS SO ORDERED**.
**SIGNED this 15th day of July, 2019.**

KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE